UNITED STATES EASTERN COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LUCITA URENA and JOSE URENA                          COMPLAINT

        Plaintiff,

                                                  Civ. No. 16-5556

-against-

CONAGRA FOODS, INC. and BJ'S WHOLESALE
CLUB, INC.,

        Defendant.
------------------------------------------------------------------------X

        Plaintiffs LUCITA URENA and JOSE URENA, by and through the undersigned counsel, bring this complaint against the defendants, and allege as follows:

        1.      This is an action for damages relation to defendants' development, testing, assembling, manufacture, packaging, labeling, preparing, distribution, marketing, supplying, and/or selling the defective product and its container sold under the name "PAM" (hereinafter "cooking spray" or "canister" or "can").

## PARTIES, JURISDICTION, AND VENUE

        2.      Plaintiffs, LUCITA URENA and JOSE URENA, are citizens and residents of Kings County, State of New York.

        3.      At all times relevant hereinafter, defendant ConAgra Foods, Inc. ("ConAgra") was and is a foreign business corporation registered in Delaware, and having its principal executive office at 11 ConAgra Drive, 11-260, Omaha, Nebraska, 68102, and which has routinely conducted business in the State of New York, selling its products in New York State on a regular basis, both before and at the time of the events alleged herein.

        4.      At all times relevant hereinafter, defendant BJ's Wholesale Club, Inc. ("BJ's") was and is a foreign business corporation registered in Delaware, having its principal executive office at 25 Research Drive, Westborough, Massachusetts, 01581, selling and distributing its own and other products throughout New York and conducting business in New York on a regular basis.

        5.      Upon Information and belief, each foreign defendant noted above also has a registered agent for legal service located in this state.

6.	Plaintiffs claim more than $75,000 in damages.

## SUMMARY OF THE FACTS

7.	On or about August 16, 2016, plaintiff LUCITA URENA ("plaintiff") was injured when a can of cooking spray suddenly and without warning exploded gravely injuring plaintiff.

8.	At the time of the explosion, plaintiff was at her residence located at 150 Jefferson Street, 1st Floor, Brooklyn, New York 11206.

9.	On the aforementioned date and at the abovementioned place, plaintiff was in the kitchen when suddenly, unexpectedly, and without warning, a nearby can of cooking spray, manufactured, sold and/or distributed by the defendants herein, exploded.

10.	Plaintiff thereby suffered major and severe bums over an extensive portion of her body.

11.	Said burns have caused grave and serious physical damage to plaintiff, including various areas and depths to her skin and even as deep as into her musculature.

12.	Plaintiff has thereby had to undertake months of intensive medical treatment for said injuries. She has also suffered significant economic loss in relation thereto.

13.	Plaintiff has further suffered psychological injuries in relation to said explosion, including, upon information and belief, PTSD and severe anxiety.

14.	Said injuries are permanent in nature, including disfiguring and embarrassing scars on plaintiff's body.

15.	Plaintiff has suffered or will suffer past, present, and future physical and mental pain and suffering and has or will as well suffer past and future medical, hospital, rehabilitative, and pharmaceutical expenses and other related damages.

16.	That by reason of the foregoing, the plaintiff, has been unable to attend to her usual occupation in the manner required, sustaining loss of wages and suffer loss of earnings in the future.

17.	Upon information and belief, defendant ConAgra was the manufacturer of the aforementioned exploding cooking spray.

18. Upon information and belief, said defective product as described above was then purchased/acquired by defendant BJ's who intended to and did sell it on a retail basis.

19. Defendant BJ's then sold the defective product to Plaintiff, LUCITA URENA, on a retail basis, said sale occurring on or about June 18, 2016.

## COUNT I: STRICT LIABILITY

### (A) DESIGN DEFECT

20. At all times hereinafter mentioned, plaintiffs repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this complaint, as though more fully set forth herein at length.

21. Upon information and belief at all times herein, defendant ConAgra defectively designed the aforementioned cooking spray product, which it then placed on the market despite posing inappropriate risks.

22. Upon information and belief, the cooking spray product as designed by ConAgra and distributed and sold by other defendant (1) posed a substantial likelihood of harm; when (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury.

23. Upon information and belief, and as facts will more particularly bear out, the defendant ConAgra's design was defective in that the defendants utilized extremely flammable and combustible materials and hazardous components inclusive of, but not limited to, petroleum gas (liquefied), propane, 2-methyl- and butane, whereas alternative safer gases were available for use at or near the same cost.

24. Upon information and belief, the defendant's design of the canister involved in the explosion was a traditional three-piece design without any pressure release mechanism on the bottom of the canister.

25. Upon further information and belief, the following were feasible, alternative gases which could have been implemented by the defendant manufacturer ConAgra and/or other defendants herein all of which would have produced a safer cooking design:
    (a) Non-flammable liquefied gas propellant;
    (b) Solstice Propellant (INCL: Tetraflouropropene) which is a non-flammable, aerosol propellant that having both low global warming potential and low photochemical activity. The propellants full chemical name is Trans-1,3,3,3-TEreflourprop- I ene. It mixes with other propellants such as l 34a. l 52a, dimethal ether, butane, iso-butane and propane. It is also mixable and compatible with many commonly used solvents like the lower alcohols,

ketones, halogenated solvents and hydrocarbons, providing a variety of formulation options. It is classified as a UN class 2.2 non-flammable liquefied gas said propellant also exhibits a low order of toxicity and complies with global regulations;

(c) Dymel 134a propellant which is also non-flammable. It can be mixed with other propellants to produce a limited range of non-flammable blends or to reduce the flammability of other aerosol formulations. It is also chemically stable;

(d) US Patent 4536323 A is a propellant composition for aerosol dispensers in the form of an oil-in-water microemulsion which renders highly flammable gaseous aerosol propellants non-flammable by dissolving the gaseous propellants in a water-immiscible solvent.

(e) Carbon dioxide (also non-flammable).

26. Upon information and belief, another alternative design that could have been used by defendants is a two piece can design constructed with tin-free steel, without welded seams with special tabs on the bottom to prevent explosions and release pressure.

27. Upon information and belief, defendant ConAgra and/or other defendant failed to design said cooking spray product in a safer manner when it knew or should have known that the above-referenced alternative, safer, less flammable, and/or non-explosive ingredients were available, and when usage of same would have reduced and/or eliminated a foreseeable risk of harm.

28. That defendants knew or should have known, for a long and sufficient amount of time prior to plaintiff's accident, that the defective design of its cooking spray product contained flammable propellants, which could cause an explosion and/or fire, yet failed to take any steps to correct the aforementioned foreseeable dangerous/defective condition.

29. Defendants also could have utilized specialized tabs in the production of its spray can which allow gases to safely escape when excess pressure mounted.

30. The defendant's defective design was a substantial "but for" factor in causing plaintiff's injury.

31. The defectively designed cooking spray was, at the time it left each defendants' hands, in a condition not reasonably contemplated by the ultimate consumer and was unreasonably dangerous for its intended use. Furthermore, the utility of not changing the design did not outweigh the danger inherent in its introduction into the stream of commerce.

32. Upon information and belief at all times herein, the accident was caused wholly and solely by the unreasonable acts/omission of the defendant ConAgra as well as BJ's as alleged above thereby leading to making the improper design into the stream of commerce by:
    (a) Negligently and carelessly designing the product:
    (b) Negligently and carelessly failing and neglecting to anticipate the dangers and defects in the design of the product;
    (c) Negligently and carelessly causing, permitting or allowing distribution of the product;
    (d) Negligently and carelessly packaging, preparing, manufacturing and/or distributing the product with latent, inherent and hidden defects;
    (e) Negligently failing to test spray cans for durability and/or potential to explode.

33. The accident and injuries and damages were caused wholly and solely by said acts or omissions on the part of the defendant ConAgra and BJ's herein.

34. Be further advised that plaintiff also relies upon the doctrine of *Res Jpsa Loquitur*, said defendants being the only entities in control of designing the can and/or placing flammable propellants in said product.

35. That by reason of the aforesaid negligence and defective design, the cooking spray canister exploded and plaintiff was rendered sick, sore, lame, and disabled and her injuries, upon information and belief, are of a permanent and disfiguring nature, that she has been obliged to incur expense and obligations for medical care, attention and treatment and continuous pain and suffering, all to her damage in a monetary sum that will be determined at trial.

### (B) MANUFACTURING DEFECT

36. At all times hereinafter mentioned, plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this complaint, as though more fully set forth herein at length.

37. Upon information and belief, and at all times mentioned hereinafter mentioned the defendants ConAgra carelessly allowed the specific can of cooking spray that injured Plaintiff to be manufactured and distributed into the stream of commerce when it (as opposed to other spray cans properly manufactured and distributed) was capable of exploding.

38. Upon information and belief, and at all times mentioned hereinafter mentioned, the defendant BJ's carelessly allowed the specific can of cooking spray that injured plaintiff to be distributed into the stream of commerce when it, as opposed to other

spray cans properly manufactured and distributed, was capable of exploding in a manner as set out herein.

39. Upon information and belief said defectively manufactured can exploded as the defendants failed to conduct adequate heat testing, pressure testing, and/or wall thickness testing of this particular cooking spray in violation of CFR 2011-Title 49, Volume 2, §§ 173.304, 173.306; CFR 2011-Title 49, VOLUME 3, §§ 178.33.

40. Upon information and belief, the defendants also failed to undertake a hot water bath test of this particular cooking spray can as required by 49 CFR 173.306.

41. Upon information and belief, the defendants did not undertake proper or adequate burst testing of this particular cooking spray can as required by 49 CFR 173 .306.

42. Upon information and belief, if burst and/or other testing had been properly undertaken, the heat-to-burst tests would have revealed that the aforementioned cooking spray can that injured plaintiff and/or batch of cans inclusive of the one injuring plaintiff would have been in violation of the aforementioned regulations.

43. Upon information and belief, the bottom of the cooking spray can exploded before the (typically weaker) spray nozzle at the top of the can allowed pressure to dislodge further demonstrating that said can was manufactured with a defective bottom.

44. Upon information and belief, there were various defective components with respect to the cooking spray at issue in this case, including (a) a possibly defective bottom portion of the canister, (b) a possibly defective top portion of the canister, (c) too much pressure and/or propellant in the canister, among other items.

45. Upon information and belief, said exploded cooking spray canister deviated in quality and other performance standards from all of the other like units due to a defect in the manufacturing process as noted above and/or as well improper workmanship.

46. That said exploded can is in the possession of the plaintiff. Upon information and belief, additional manufacturing defects may be realized upon testing of said canister. This includes possible defects in the metal of aluminum can.

47. The product was intended to and did reach the plaintiff without substantial modification.

48. Be advised that, plaintiff also relies upon the doctrine of *Res Jpsa Loquitur*, the defendants being in sole control of how the can was placed in the stream of commerce and also because cooking spray cans do not explode all by themselves unless some defect in their makeup existed at time of manufacture, distribution and/or eventual final sale.

49. That by reason of the aforesaid negligence and manufacturing defects, the cooking spray canister exploded and plaintiff was rendered sick, sore, lame and disabled and her injuries which, upon information and belief, are of a permanent and disfiguring nature, and plaintiff has been obliged to incur expense and obligations for medical care, attention land treatment and she is informed and she verily believes that she will in the future be obliged to incur further expense and obligations for medicines, medical care, attention and treatment and continuous pain and suffering, all to her damage in a monetary sum that will be determined at trial.

### (C) FAILURE TO WARN

50. At all times hereinafter mentioned, plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this complaint, as though more fully set forth herein at length.

51. The defendants failed to properly warn, explain, and/or instruct its/their consumers, including the plaintiff, regarding the aforementioned explosive characteristics of its/their cooking spray product.

52. Upon information and belief, the defendants' warnings, explanations and/or instructions upon its/their cooking spray product were inadequate and/or defective in that they were devoid of any content indicating the can could explode (even if not exposed to direct heat). If said warnings existed they were not written legibly, were not large enough, were not written prominently, were not in proper contrast to its/their background, were not properly provided with the product and/or otherwise defective.

53. Upon information and belief, defendant ConAgra wholly failed to affix adequate warnings to cooking spray can, and/or failed to provide commercial warnings or product inserts to the wholesaler and/or distributor who purchased said product - in other words, there was a complete absence of any warning by defendant ConAgra, of the danger of its foreseeable use about which it knew or should have known.

54. Upon information and belief, the defendant BJ's likewise failed to properly affix warnings and/or instructions regarding the aforementioned explosive characteristics upon their cooking spray product.

55. The warnings and/or instructions placed upon the defendants' cooking spray product were ambiguous, vague, subjective and/or otherwise defective.

56. Upon information and belief, the defendants failed to properly warn against the dangers of their cooking spray product.

57. Upon information and belief, the defendants failed to accurately label and warn users that the cooking spray canister may contain ingredients such as liquefied petroleum gas, propane, butane, and/or ethanol and only listed "propellant" on the back under small print ingredients.

58. Upon information and belief, the defendants failed to warn and adequately label that the cooking spray canister contained "extremely flammable aerosol".

59. The warnings and/or instructions placed upon the defendant's cooking spray product by were lacking in proper content ambiguous, vague, subjective and/or otherwise defective.

60. Upon information and belief, the defendants failed to properly warn against the dangers of placing its/their cooking spray product within proximity to people, when said use and/or event was foreseeable.

61. Upon information and belief, the defendants failed to accurately label and warn users that the cooking spray canister may contain ingredients such as liquefied petroleum gas, propane, butane, and/or ethanol and only listed "propellant" on the back under small print ingredients.

62. Upon information and belief, all of the defendants individually and collectively knew or should have known, for a long and unreasonable amount of time prior to plaintiffs accident, that its/their cooking spray product could cause and explosion and/or fire, yet failed to affix proper warnings and/or labels of the aforementioned foreseeable dangerous/defective conditions.

63. Upon information and belief, the cooking spray involved in this fire, as designed, manufactured and/or sold by the defendants was defective in that it may also have been overpressurized and filled with flammable contents, creating a risk of fire and burns to persons (a) using it or (b) even nearby where it may be stored.

64. At the time ConAgra designed, manufactured and/or sold the cooking spray it knew of the risk of over-pressurizing and venting of the flammable product, and yet failed to advise purchasers and users of the dangerous condition of the product.

65. Upon information and belief, ConAgra failed to accurately label and warn users that the cooking spray canister may contain ingredients such as liquefied petroleum gas, propane, butane, and/or ethanol and only listed "propellant" on the back under small print ingredients.

66. That by reason of the foregoing, plaintiff also relies upon the doctrine of Res Ipsa Loquitur, as stated aforesaid (i.e. sole control by defendants and cans not exploding absent negligence).

67. That the failure of the defendants to warn the plaintiff was the proximate cause of plaintiff injuries.

68. That by reason of the aforesaid negligence and failure to warn, plaintiff was rendered sick, sore, lame and disabled and her injuries, upon information and belief, are of a permanent nature. Furthermore plaintiff has been obliged to incur expense and obligations for medical care, attention and treatment and she is informed and she verily believes that she will in the future be obliged to incur further expense and obligations for medicines, medical care, attention and treatment and continuous pain suffering, all to her damage in a monetary sum that will be determined at trial. Furthermore, by reason of the foregoing, the plaintiff, has been unable to attend to her usual occupation in the manner required, sustaining loss of wages and suffer loss of earnings in the future.

## COUNT II: BREACH OF EXPRESS WARRANTY
## AND IMPLIED WARRANTY OF FITNESS AND MERCHANT ABILITY

### (A) EXPRESS WARRANTY

69. At all times hereinafter mentioned, plaintiffs, repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this complaint, as though more fully set forth herein at length, including but not limited to allegations of improper design and/or manufacturing defect.

70. At all times herein, that at times of manufacture, sale and/or distribution all of the defendants, including ConAgra and/or BJ's, their agents, servants and/or employees expressly warranted to the general public and to this plaintiff that their cooking spray was a product they could effectively use for cooking and that it was (1) safe for normal storage and/or use and for (2) the ordinary use intended.

71. The plaintiff, LUCITA URENA, relied upon said warranties and representations in both using as well as being regularly in close proximity to said product. However, while nearby said product she was errantly caused to suffer injuries as aforesaid.

72. Upon information and belief, all of the defendants, including ConAgra and/or BJ's, their agents, servants, and/or employees breached said warranties as the cooking spray was not fit at all for the purposes for which it was intended, as it was of unsafe design and dangerous and contained latent defects, all proven to be true as it exploded.

73. Upon information and belief, the plaintiffs had no knowledge of the falsity of these warranties.

74. More specifically, ConAgra and/or BJ's made public statements, descriptions of the defective product, advertising, catalogues, online ordering website, written materials, and other representations, wherein defendants expressly warranted, among other things, that the aforesaid cooking spray was efficacious and safe for its intended use, namely, as a safe (non-explosive can) food lubricant to be used in kitchens prevent food materials from sticking to cooking pans and other cooking devices. In fact, one advertisement, attached as **Exhibit A**, stated "no matter how you use it, PAM helps you pull it off." In contrast, each and/or all of said defendants carelessly allowed the specific can of cooking spray that injured Plaintiff to be manufactured and placed into the stream of commerce when it, possibly as opposed to other spray cans properly manufactured and distributed, was singularly capable of exploding.

75. Plaintiff further alleges that other written materials are known to defendants ConAgra and/or BJ's and in their possession. It is plaintiff's reasonable belief that these materials shall be produced by defendants once plaintiff is afforded the opportunity to conduct discovery, providing yet further important expressions of product safety.

76. When defendants ConAgra and/or BJ's made said express warranties, defendants knew the purpose for which the aforesaid cooking spray was to be used (i.e. as a non-stick lubricant for cooking), and warranted it to be a good product for preparing food in a kitchen and thus in all respects safe and proper for such purpose.

77. Defendants drafted the documents and/or made the statements upon which these expressed warranty claims are based, and in so doing, defined the terms of those warranties none of which warned of instantaneous can explosion. If they did not they none the less passed the product into the stream of commerce when they knew or should have known of said express warranties.

78. Said cooking spray that injured plaintiff does not conform to defendants' expressed representations in that it is and was clearly not safe for its intended use when it suddenly exploded in a kitchen.

79. As noted above and incorporated herein by reference, the express language in the labeling and advertising of said cooking spray made it appear that said spray was generally safe for cooking uses.

80. Said cooking spray was defective and did not conform to defendants' promises, descriptions, on or affirmations of fact and was not adequately packaged, labeled, promoted, or fit for the ordinary purposes for which such products are used.

81. The plaintiff injuries were a specific result and proximately caused by the deviations and misrepresentations of the express warranties alleged above.

82. Upon information and belief, the defendants ConAgra and/or BJ's may have provided previous samples of cooking spray that did not explode thereby also creating an express warranty that the other canisters of cooking spray would conform to the samples, to wit, said cooking spray canisters would not self-ignite and explode causing injury.

### (B) BREACH OF IMPLIED WARRANTY OF FITNESS AND OF MERCHANTIBILITY

83. At all times hereinafter mentioned, plaintiff, LUCITA URENA, repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this complaint, as though more fully set forth herein at length, including but not limited to allegations of improper design and/or manufacturing defect.

84. Said cooking spray was also sold with an implied warranty of fitness (UCC 2-314) and/or implied warranty of merchantability (UCC 2-316) that the product was fit for the ordinary purpose for which such goods are used and would provide a minimum level of quality to the end user (here being the plaintiff) and/or was otherwise of merchantable quality at time of sale/distribution.

85. The defendants ConAgra and/or BJ's were manufacturers, vendors or merchants of said cooking spray and sold similar goods on numerous occasions some of which, upon information and belief, also suddenly and improperly exploded.

86. That the defendant ConAgra was involved in the manufacturing, selling, and/or distribution of said cooking spray.

87. That the defendant BJ's was involved in the selling, and/or distribution of said cooking spray.

88. That at time of each successive sale and/or distribution the defendants breached said implied warranties of either (a) merchantability and/or (b) fitness as said cooking spray product was neither minimally safe for its expected purpose or of merchantable quality as upon time of sale(s). Specifically, the defendants impliedly warranted that cooking spray was safe for normal use and that said product would not selfignite nor explode causing injury.

89. Said defects existed when the canister was delivered to the end-user, plaintiff.

90. Plaintiff repeats above allegations indicating that (a) the product injuring plaintiff was defectively designed or manufactured and (b) that said defect or defects existed when provided to its user/final purchaser.

91. That the plaintiff's injuries were a specific result and proximately caused by the deviation and breach of the implied warranties of merchantability and/or fitness.

92. That by reason of breach of warranties, this plaintiff was rendered sick, sore, lame and disabled and her injuries, upon information and belief, are of a permanent nature, that she has been obliged to incur expense and obligations for medical care, attention and treatment and she is informed and she verily believes that she will in the future be obliged to incur further expense and obligations for medicines, medical care, attention and treatment and continuous pain suffering, all to her damage in a monetary sum that will be determined at trial. Furthermore, by reason of the foregoing, the plaintiff, has been unable to attend to her usual occupation in the manner required, sustaining loss of wages and suffer loss of earnings in the future.

## COUNT III: NEGLIGENCE

93. At all times hereinafter mentioned, plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this complaint, as though more fully set forth herein at length, including but not limited to allegations of improper design and/or manufacturing defect.

94. That all defendants were negligent in by not immediately recalling said product and terminating sales upon learning that its product could explode at room temperatures.

95. Upon information and belief at all times herein, the accident was caused wholly and solely by the unreasonable acts/omission of the defendant ConAgra as well as other defendants as alleged above in:
    (a) Negligently and carelessly designing the product:
    (b) Negligently and carelessly failing and neglecting to anticipate the dangers and defects in the design of the product;
    (c) Negligently and carelessly causing, permitting or allowing distribution of the product;
    (d) Negligently and carelessly packaging, preparing, manufacturing and/or distributing the product with latent, inherent and hidden defects;
    (e) Negligently failing to test spray cans for durability

96. That by reason of negligence of warranties, this plaintiff was rendered sick, sore, lame and disabled and her injuries, upon information and belief, are of a permanent nature, that she has been obliged to incur expense and obligations for medical care,

attention and treatment and she is informed and she verily believes that she will in the future be obliged to incur further expense and obligations for medicines, medical care, attention and treatment and continuous pain suffering, all to her damage in a monetary sum that will be determined at trial. Furthermore, by reason of the foregoing, the plaintiff, has been unable to attend to her usual occupation in the manner required, sustaining loss of wages and suffer loss of earnings in the future.

## COUNT IV: LOSS OF CONSORTIUM

97. Plaintiff, JOSE URENA, repeats and realleges each and every allegation contained in paragraphs 1 through 97 inclusive, with the same force and effect as though more fully set forth at length herein.

98. That at all of the times hereinafter mentioned, the plaintiff, JOSE URENA, was and still is the husband of the plaintiff, LUCITA URENA, and resided with and cohabitated with the plaintiff, LUCITA URENA.

99. That in consequence of the injuries sustained by the plaintiff, LUCITA URENA, as aforesaid, the plaintiff, JOSE URENA, incurred medical and hospital expenses, and attention in an effort to cure the said, LUCITA URENA, of the said injuries, and necessarily paid diverse sums of money for medical, hospital and attention, and for medicines, and this plaintiff necessarily incurred obligations and extended monies for the care of the said LUCITA URENA, and for the performance of the household duties usually performed by this said LUCITA URENA and the plaintiff, JOSE URENA, was deprived of the companionship and consortium of the plaintiff, LUCITA URENA, for some time.

100. That as a result of the foregoing, the plaintiff, JOSE URENA, has been damaged in a sum which exceeds the sum of $75,000.

**PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs pray for judgment against the defendants as follows:
(a) Awarding compensatory damages and loss of wages in a sum exceeding $75,000 in amount to plaintiff LUCITA URENA
(b) Awarding loss of consortium in a sum exceeding $75,000 in amount to plaintiff JOSE URENA
(c) Awarding the costs and expenses of this litigation to plaintiffs.
(d) Granting all such other relief as the Court deems necessary, just, and proper.


**DEMAND FOR JURY TRIAL**
Plaintiffs hereby demand a trial by jury.

Dated: October 5, 2016
     New York, New York

                        WILLIAMS SCHWITZER & ASSOCIATES, P.C.

BY:    Howard R. Cohen, Esq. (7640)
        *Attorneys for Plaintiffs*
        820 2nd Avenue, 10th Floor
        New York, New York 10017
        (212) 683-3800